**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------

**AXIS CONSTRUCTION CORP.,**

        **Plaintiff,**

**vs-**

**TRAVELERS INDEMNITY COMPANY OF**
**CONNECTICUT AND STATE NATIONAL**
**INSURANCE COMPANY,**

        **Defendants.**

-------------------------------------------------------------------

CV 2:20-CV-01125

## MEMORANDUM OF LAW IN OPPOSITION TO TRAVELERS INDEMNITY COMPANY OF CONNECTICUT'S MOTION FOR SUMMARY JUDGMENT

STONBERG MORAN, LLP
Attorneys for Defendant
STATE NATIONAL INSURANCE
COMPANY

By: _____
    Sherri N. Pavloff (SP-5373)
505 Eighth Avenue, Suite 2302
New York, New York 10018
(212) 231-2220
File No.: 40191
Sherri.pavloff@stonbergmoran.com

i

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**……….…………………………………………1

**COUNTER-STATEMENT OF FACTS**..…………………………………………1

**ARGUMENT**

    **POINT I**
    **TRAVELERS OWES A DUTY TO DEFEND AXIS**
    **IN THE UNDERLYING SUIT**…………………………………………………6

        A.  **New York Labor Law §§240 and 241(6) impose**
            **vicarious liability on general contractors for the**
            **acts of their subcontractors**…………………………………………6

        B.  **An Insurer's Duty to Defend is broader than its**
            **duty to indemnify and is triggered when the facts**
            **give rise to a reasonable possibility of coverage**…………………8

        C.  **Travelers "Caused by" endorsement and**
            **Burlington v. NYCTA**...................................................................8

        D.  **The duty to defend under a "caused by"**
            **additional insured endorsement**…………………………………..9

        E.  **The cases upon which Travelers relies are**
            **either inapposite or wrongly decided**……………………………14

    **POINT II**
    **TRAVELERS DUTY TO DEFEND IS NOT EXCESS OVER**
    **SNIC'S DUTY TO DEFEND AXIS BECAUSE**
    **TRAVELERS AND SNIC INSURE DIFFERENT RISKS**……………....19

**CONCLUSION**…………………………………………………………..20

# TABLE OF AUTHORITIES

**Cases**

*All State Interior Demolition, Inc. v. Scottsdale Ins. Co.*, 168 A.D.3d 612 (1st Dept. 2019)........ 10

*Allied World Assurance Co. v. Aspen Specialty Ins. Co.*, 192 A.D.3d 449, 139 N.Y.S.3d 816, 817, (1st Dept. 2021)……………………………………………………….……………11

*Assurance Co. v. Aspen Specialty Ins. Co.*, 192 A.D.3d 449, 139 N.Y.S.3d 816, 817, (1st Dept. 2021)........................................................................................................................... 12

*Bulnes v. ASB,* New York State Supreme Court, Bronx County*,* Index No. 9412/2017…...……12

*Burlington Ins. Co. v. NYCTA*, 29 N.Y.3d 313, 323 (2017) ..................................................... 8, 9

*Charter Oak Fire Ins. Co. v. Zurich American Ins. Co.*, 462 F.Supp.3d 317, 324 (SDNY 2020), ……………………………………………………………………………8, 12, 13, 14, 17, 18

*Fitzpatrick v. American Honda Motor Co., Inc.*, 78 N.Y.2d 61, 65 (1991)................................... 8

*Garcia v. Delta Air Lines, Inc.*, 2001 WL 91619 at *4 (EDNY 2001) ........................................ 7

*Great Northern Ins. Co. v. Mount Vernon Fire Ins. Co.*, 92 N.Y.2d 682 (1999) ........................ 19

*Hanover Ins. Co. v. Philadelphia Indemnity Ins. Co.,* 159 A.D.3d 587 (1st Dept. 2018)..10, 14, 15

*Hanover Ins. Co. v. Philadelphia Ins. Co.,* New York Supreme Court, New York County Index No. 154006/2014.................................................................................................. 14, 15

*Hawthorne v. Couth Bronx*, 78 N.Y.2d 443 (1991)...................................................................... 20

*HRH Constr. Corp. v. Commercial Underwriters Ins. Co.*, 11 A.D.3d 321, 323 (1st Dept. 2004)19

*Indian Harbor Ins. Co. v. Alma Tower, LLC*, 165 A.D.3d 549 (1st Dept. 2018)...................... 9, 10

*Indian Harbor v. Alma*, New York State Supreme Court, New York County, Index No. 159286/2014............................................................................................................ 9, 10

*Live Nation Marketing Inc. v. Greenwich Ins. Co.*, 188 A.D.3d 422 (1st Dept. 2020) ........... 10, 11

*Live Nation Marketing Inc. v. Greenwich Ins. Co.*, New York Supreme Court, New York County, Index No. 655784/2016…………………………………………………………11

*McCarthy v. Turner Const. Inc.*, 17 N.Y.3d 369, 378 (2011)……………………………………7

*Nostrom v. A.W. Chesterton Co.*, 15 N.Y.3d 502, 507-508 (2010) ............................................. 7

*Ohio Security Ins. Co. v. Travelers Indemnity Co.*, 2021 WL 797670 (SDNY 2021)…………14, 16, 17, 18

*Pennsylvania Mfrs. Ass'n v. Liberty Mut. Ins. Co.*, 39 A.D.3d 1161, 1162 (4th Dept. 2007)……20

*Pioneer Central School Dist. v. Preferred Mut. Ins. Co.*, 165 A.D.3d 1646 (4th Dept. 2018) 14, 16

*Pilkington v. Tutor Perini Building Corp.*, 2020 WL 1285542 at *15 (SDNY 2020) ................... 8

*Regal Constr. Corp.*, 15 N.Y.3d 34, 37 (2010)............................................................................. 7

*Rizzuto v. L.A. Wener Contracting Co., Inc.*, 91 N.Y.2d 343, 349-350 (1998) ............................. 6

*Sport Rock Int'l v. American Cas. Co. of Reading, Pa*, 65 A.D.3d 12 (1st Dept. 2009).............. 19

**Statutes**

Labor Law §240 ..................................................................................................................*passim*

Labor Law §241 ..................................................................................................................*passim*

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in opposition to TRAVELERS INDEMNITY COMPANY OF CONNECTICUT'S ("Travelers") motion for summary judgment. Contrary to Travelers' position, it owes a duty to defend Plaintiff, AXIS CONSTRUCTION CORP. ("Axis") for an underlying action filed by Peter M. Filippone ("Filippone") against, *inter alia,* Axis ("Underlying Suit"), which arises out of an accident that occurred on January 19, 2017 when Filippone fell over a piece of Masonite ("Accident") because Travelers' named insured, American Wood Installers, Inc. ("AWI"), who was Filippone's employer, is alleged to have caused the Accident, both in the pleadings and through the deposition testimony in the Suit; and therefore Axis' alleged liability is vicarious and stems from AWI's alleged negligence.

## COUNTER-STATEMENT OF FACTS

As set forth in Plaintiff Axis' Statement of Undisputed Facts, the Underlying Suit alleges that Filippone was injured while working as an employee of AWI (*See* Exhibit 2 to Plaintiff's Statement of Undisputed Facts, ¶¶ 124, 200) as a result of an "unsafe, hazardous, dangerous, improper flooring and/or protective flooring and/or Masonite sheets laid to protect floor during construction located at the above-mentioned location." *See*, Exhibit 2 ¶ 128.

Filippone further alleges that his injury was caused by Axis' failure to provide Filippone with the proper safety devices to prevent the Accident. (Exhibit 2, ¶¶ 221, 225). So too, Filippone alleges that Axis is responsible for the accident pursuant to Labor Law §§ 240 and 241. (Exhibit 2 ¶¶ 221, 225. More specifically, Filippone alleges:

> 225. That the aforesaid occurrence to the Plaintiff, PETER M. FILIPPONE was caused by and due to the violation by the Defendants, of Section 241 (6) of the Labor Law of the State of New York, in that the Defendants, having employed and directed the

Plaintiff, PETER M. FILIPPONE, to perform labor, failed to provide reasonable and adequate protection and safety to the Plaintiff.

Filippone's bill of particulars elaborates that Axis caused or created the unsafe condition, failed to properly inspect the area of the accident, failed to warn persons of the condition which led to the accident and failed to provide a safe place to work for Filippone (*See* Exhibit 4 to Plaintiff's Statement of Undisputed Facts paragraph 6). More specifically, the bill of particulars alleges that Axis was negligent in that it:

> negligently owned, operated, maintained, managed, controlled and inspected the aforesaid premises . . . failing to inspect the aforesaid area; in failing to properly inspect the aforesaid area; in failing to adequately inspect the aforesaid area . . . in failing to take care for the safety of persons and/or individuals traversing said location, more particularly, the plaintiff; in failing to warn persons traversing said premises, including the plaintiff; in failing to provide warnings at the aforesaid premises, more particularly, at or about the location of the subject occurrence; in failing to provide a safe place to work at the aforesaid premises, more particularly, at or about the location of the subject occurrence; in causing and/or creating the aforesaid unsafe, hazardous, defective and/or dangerous condition where the subject occurrence took place

Exhibit 4,¶ 6, page 2. The bill of particulars further alleges that Filippone tripped and fell due to a 1/8" Masonite flooring which was not safely taped down. *See* Exhibit 4 to Plaintiff's Statement of Undisputed Facts, ¶10.)

The bill of particulars served by Axis in response to AWI's demand alleges that AWI caused the Accident because AWI created the condition with the Masonite; because AWI failed to provide a safe place to work for Filippone; and because AWI failed to warn Filippone about the condition. Indeed, the bill of particulars served by Axis quotes Filippone's bill of particulars. *See* Exhibit 5 to Plaintiff's Statement of Undisputed Facts ¶3.

As set forth in both Plaintiff's and Travelers' summary judgment motions, AWI contracted with Axis to install the millwork at the project where the Accident occurred. *See* Exhibit 6 to Plaintiff's Statement of Undisputed Facts. The Subcontract obligates AWI to "take reasonable

safety precautions with respect to the performance of this Subcontract ... comply with safety measures initiated by [Axis] and with applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities for the safety of persons and property in accordance with the requirements of the Prime Contract." *See* Exhibit 6, §5.3.1. The contract also required AWI to supervise and direct its employees' work (Exhibit 6, §5.1.2).

During the course of discovery in this action, SNIC advised all parties in its Rule 26 Disclosures, that it intended to rely upon all deposition transcripts from the Underlying Suit. See Exhibit "1" to the Affirmation of Sherri N. Pavloff dated April 26, 2021 ("Pavloff Aff."). As late as October 20, 2020, SNIC also advised all parties that some of the deposition transcripts were outstanding and that additional depositions were scheduled. See Exhibit "2" to the Pavloff Aff.

Three of those transcripts included the deposition testimony of Louis Dimuro ("Dimuro") of ABC Construction ("ABC"), Doug LoPresti ("LoPresti") of AWI and Joseph Boccio ("Boccio") of Axis. The deposition transcript of Dimuro is attached as Exhibit "3" to the Pavloff Aff. The deposition testimony of LoPresti is attached as Exhibit "4" to the Pavloff Aff. The deposition testimony of Boccio is attached as Exhibit "5" to the Pavloff Aff.

Dimuro, of ABC, the entity which contracted with Axis to act as laborers, testified that while ABC installed the Masonite that is alleged to have caused the Accident, AWI requested that some of the Masonite not be taped, and also untaped some of the Masonite ABC installed:

Q. Explain to me how the process works where it is laid down in a manner like this in Defendant's Exhibit I but not yet taped down and the people are working in that area.

MR. STIMPFL: Objection to form. You can answer.

A. If it is not taped down in specific areas, it is because –

MR. POLACCO:· Objection to form.

A. AWI specifically asked us not to do anything around the columns because they have to move the Masonite to put a column wrap, put the column on. So to attach it, they have to move the Masonite away to get the column wrap on it. So if you see untaped areas, that is one account that would happen. And the other account would be that they asked us to leave the area because they are working in it.

*See* Exhibit 3, page 21, lines 7-24.

Q. You told us that in addition to receiving instruction from Mr. Goulding of Axis, American Wood also asked you not to Masonite around the columns because they had to work there, correct?

A. That would be correct, yes

*See* Exhibit 3, page 61.

Mr. LoPresti agreed that AWI would sometimes have to remove the Masonite to perform

its work. *See* Exhibit 4, page 53:

Q. Would that work require AWI to move pieces of the Masonite in order to install the base moldings and what other work it was doing?

A. If it was in the way, yes, we would have to move it.

*See* Exhibit 4, page 53 lines 3-7.

Mr. Boccio, of Axis, testified that in order for the AWI workers, including Filippone to

perform the installation of the slot machines, they had to untape the Masonite:

Q. Earlier you testified there were men working to remove the Masonite on the date of plaintiff's accident, January 19, 2017. Do you recall stating that?

MR. HOLLAND: Objection.

Q. Who were these men?

A. Subcontractors.

Q. Who were they employed by?

A. I don't recall.

Q. Would they be the carpenters that were installing certain types of furniture or fixtures on the day of plaintiff's accident?

A. Whoever was installing the bases for the slot machines. That would be, I don't know if they were carpenters or mill workers or whatever their title was. But anything that happened to be in the way of that installation, that's where the Masonite was removed.

*See* Exhibit 5, page 67 line 11 to 68 line 4.

Q. When you said these men were removing the Masonite so they can install the slot machines, would that mean they were also untaping some of the Masonite?

A. They would have to, yes.

Q. Before the bases for the slots could be installed, these men had to untape and move pieces of Masonite, correct?

A. That's correct.

Q. This was performed in various areas throughout the high roller room on the day of plaintiff's accident?

A. Yes. If you are specifically saying just the high roller, but it was happening throughout the entire project.

Q. So it was in the high roller room as well as the rest of the project, correct?

A. That's correct.

Exhibit "5", Page 68 line 24 to 69 line 17.

Q. The point where you saw something that led you to believe that Masonite was moved after it was placed down in the high roller room, is that what happened, you were walking by and you observed something?

A. Yes.

Q. When was that in relation to that day? Was it in the morning? was it in the evening? Was it the middle of the day?

A. It was throughout the day.

Q. What was it that you saw specifically that led you to believe that Masonite was moved after it was placed in certain areas?

A. There were bases being installed.

Q. How did you know the Masonite was moved out of the way as opposed to the Masonite never having been placed specifically in those areas?

A. There were workers installing bases on carpet that was previously covered.

Q. My question is, had you seen it previously covered in those areas and then at a later time that day you saw it uncovered?

A. Yes.

Exhibit "5", Page 78 line 13 to 79 line 11.


## ARGUMENT

## POINT I

## TRAVELERS OWES A DUTY TO DEFEND AXIS IN THE UNDERLYING SUIT.

Contrary to Travelers' arguments, Filippone seeks to recover damages from Axis not for "defects in the flooring" (Travelers Motion page 8), but rather for problems created by the lifting of parts of Masonite installed on top of carpet at the jobsite because of the absence of taping in the area of the Accident. In addition, Filippone alleges that Axis is responsible pursuant to Labor Law §§240 and 241. While ABC installed the Masonite, there are allegations that AWI created and/or caused the lack of taping and testimony that AWI did this by either asking that ABC not install the taping and/or removing the taping that ABC installed. Therefore, Axis' potential liability is based on its vicarious liability for the acts of AWI. As such, Travelers has a duty to defend Axis in the Underlying Suit.

### A. New York Labor Law §§240 and 241(6) impose vicarious liability on general contractors for the acts of their subcontractors.

We begin with the liability imposed by New York's labor laws. It is axiomatic that liability imposed upon a general contractor under Labor Law §241(6) is, in the absence negligence on the part of the general contractor, vicarious liability for the negligent acts of another. *Rizzuto v. L.A. Wener Contracting Co., Inc.*, 91 N.Y.2d 343, 349-350 (1998):

Labor Law § 241(6), by its very terms, imposes a nondelegable duty of reasonable care upon owners and contractors "to provide reasonable and adequate protection and safety" to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed . . . . Indeed, the history underlying section 241, as amended, clearly manifests the legislative intent to place the "*ultimate responsibility* for safety practices at building construction jobs where such responsibility actually belongs, *on the owner and general contractor*" (1969 N.Y. Legis. Ann., at 407–408 [emphasis supplied]; . . .

Deeming this responsibility to be "absolute" . . . we held that section 241(6) imposes liability upon a general contractor *for the negligence of a subcontractor,* even in the absence of control or supervision of the worksite. . .

. . .

As the foregoing demonstrates, although this Court has consistently rejected the notion that a violation of section 241(6) results in absolute liability *irrespective of the absence of some negligent act* which caused the injury, we have repeatedly recognized that section 241(6) imposes a nondelegable duty upon an owner or general contractor to respond in damages for injuries sustained *due to another party's negligence* in failing to conduct their construction, demolition or excavation operations so as to provide for the reasonable and adequate protection of the persons employed therein. Thus, once it has been alleged that a concrete specification of the Code has been violated, it is for the jury to determine whether the negligence of some party to, or participant in, the construction project caused plaintiff's injury. If proven, the general contractor (or owner, as the case may be) is vicariously liable without regard to his or her fault. (emphasis in original).

*See also, Pilkington v. Tutor Perini Building Corp.*, 2020 WL 1285542 at *15 (SDNY 2020) ("Under New York law, a general contractor's liability under Section 241(6) may be "purely vicarious" (in other words, it may be derived solely from the negligence of another party, such as a subcontractor), and, when that is the case, the general contractor is still entitled to common-law indemnification from the party whose negligence caused the injury."); *Nostrom v. A.W. Chesterton Co.*, 15 N.Y.3d 502, 507-508 (2010).

So too, liability imposed by Labor Law §240 is also vicarious. *McCarthy v. Turner Const. Inc.*, 17 N.Y.3d 369, 378 (2011); *Garcia v. Delta Air Lines, Inc.*, 2001 WL 91619 at *4 (EDNY 2001).

**B. An Insurer's Duty to Defend is broader than its duty to indemnify and is triggered when the facts give rise to a reasonable possibility of coverage.**

It is well settled that "an insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." *Fitzpatrick v. American Honda Motor Co., Inc.*, 78 N.Y.2d 61, 65 (1991). In *Fitzpatrick*, the Court also explained that the duty to defend also arises if the insurer "has knowledge of facts which potentially bring the claim within the policy's indemnity coverage." *Id.,* at 66. This is because an insurer cannot shield itself from the defense coverage its policy provides by woodenly or mechanically comparing the complaint to the policy. *Id. See also, Charter Oak Fire Ins. Co. v. Zurich American Ins. Co.*, 462 F.Supp.3d 317, 324 (SDNY 2020) ("[E]ven when the complaint itself does not contain facts or law suggesting a possibility of coverage, the insurer is required "to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage. "") This standard applies equally to additional insureds and named insureds." *Regal Constr. Corp.*, 15 N.Y.3d 34, 37 (2010).

**C. Travelers "Caused by" endorsement and Burlington v. NYCTA.**

The Travelers policy confers additional insured coverage "if and only to the extent that, the injury or damages is caused by acts or omissions of you . . .in the performance of "your work"". *See* Paragraph 19 in Plaintiff's Rule 56.1 Statement, and Exhibit 9 thereto. This endorsement therefore triggers additional insured coverage "where the named insured is the proximate cause of the injury." *Burlington Ins. Co. v. NYCTA*, 29 N.Y.3d 313, 323 (2017). The Court of Appeals further explained that such endorsement extends additional insured coverage "for damage resulting from [the named insured's] negligence or some other actionable "acts or omissions."" *Id.* Finally,

the Court in *Burlington* held that the "caused by" language "was intended to provide coverage for an additional insured's vicarious or contributory negligence." *Burlington*, 29 N.Y.2d at 326.

### D.  **The duty to defend under a "caused by" additional insured endorsement.**

The decision in *Burlington* construed the endorsement in the context of an insurer's duty to indemnify a purported additional insured.  Since that time, courts have examined when this type of additional insured endorsement triggers an insurer's duty to defend.  In every decision but one, courts construing the question of whether an employer's insurer has an obligation to defend an owner or general contractor as an additional insured in suits alleging that the owner or general contractor violated New York's labor laws have found that, at a minimum, a duty to defend is owed.

For example, in *Indian Harbor Ins. Co. v. Alma Tower, LLC*, 165 A.D.3d 549 (1st Dept. 2018), the First Department held that the insurer for the employer had an obligation to defend the owner and general contractor sued for labor law violations.  The underlying complaint which gave rise to this decision alleged that Plaintiff was struck by a falling beam or object while working and that the owner and general contractor were negligent and violated the labor law. *Indian Harbor v. Alma*, New York State Supreme Court, New York County, Index No. 159286/2014, documents 11 and 12.   Included were allegations that the owner and general contractor failed to provide a safe place to work.  *Id.*   The third-party actions filed against the employer alleged that if the Plaintiff was entitled to recover, his injuries resulted from the employer's negligence.  *Indian Harbor v. Alma*, New York State Supreme Court, New York County, Index No. 159286/2014, documents 15 and 16.

Based on these facts, the First Department required the employer's insurer to defend the owner and general contractor, because they were alleged to be vicariously liable for the employer's negligent acts, explaining:

> Shortly after the underlying action was commenced, asserting claims of common-law negligence and Labor Law violations against Alma Tower and Vordonia in connection with injuries sustained by the injured party while he was working on the property for subcontractor S & S HVAC Corp., Alma Tower and Vordonia commenced third-party actions against S & S alleging negligence and seeking indemnification and contribution. Alma Tower and Vordonia also wrote to plaintiff seeking coverage pursuant to the insurer's duty to defend. Thus, plaintiff had actual knowledge that S & S may have proximately caused the underlying injury and that therefore Alma Tower and Vordonia may be vicariously liable to the injured party.

*Indian Harbor*, 165 A.D.3d at 549. In reaching this decision, the First Department distinguished the decision in *Hanover Ins. Co. v. Philadelphia Indemnity Ins. Co.,* 159 A.D.3d 587 (1st Dept. 2018), discussed more fully *infra.*

In *All State Interior Demolition, Inc. v. Scottsdale Ins. Co.*, 168 A.D.3d 612 (1st Dept. 2019), the First Department held that even though a complaint filed by a Plaintiff against a general contractor alleging violations of New York State Labor laws did not include any allegations of negligence against his employer, because the plaintiff was working for his employer at the time of the accident, the employer's insurer had an obligation to defend the general contractor because the employer's work involved demolition allegations and the plaintiff alleged he was injured when he stepped on construction debris. The Court also held:

> Moreover, the third-party complaint brought in the underlying action by plaintiffs herein against United, incorporates the underlying complaint by reference, alleges that United was negligent, and seeks indemnification from United, and is therefore sufficient to trigger Scottsdale's obligation to defend All State.

*All State*, 168 A.D.3d at 257.

In *Live Nation Marketing Inc. v. Greenwich Ins. Co.*, 188 A.D.3d 422 (1st Dept. 2020), the First Department held that the contractor (Best Buy) which retained an independent contractor

(Mark Perez) to install a booth was obligated to provide a defense to the manager of the premises (Live Nation), for an accident that occurred when the Plaintiff was caused to fall when an employee of Live Nation, operating a forklift, struck the booth where the Plaintiff was standing. *Live Nation*, New York Supreme Court, New York County, Index No. 655784/2016, Document 31. The underlying complaint did not identify Best Buy as a defendant and did not contain any allegations that the Best Buy was negligent in any way; rather the underlying complaint alleged that all named defendants were negligent in failing to provide a safe place to work and in failing to operate the forklift in a safe manner. *Id.* The third-party action against Best Buy sought common law contribution and indemnification and contractual indemnification. The contract between Best Buy and Live Nation (*Id.,* document 49) did not require Best Buy to ensure that the safety of its employees or independent contractors. *Id.* Document 30, paragraph 4(a)(iii).

The court in the underlying action dismissed the third-party complaint against Best Buy finding that no evidence existed that any negligence of Best Buy caused the accident. (*Id.,* document 228). Despite this finding, which led the First Department to hold that Best Buy's insurer had no obligation to indemnify Live Nation, the First Department nevertheless required Best Buy's insurer to defend Live Nation, "because the allegations of the underlying complaint and the third-party complaint suggested a reasonable possibility of coverage under XL's broad duty to defend, i.e., a reasonable possibility that the underlying injury was caused, in whole or in part, by Best Buy's acts or omissions." *Live Nation*, 188 A.D.3d at 423. *See also, Allied World Assurance Co. v. Aspen Specialty Ins. Co.*, 192 A.D.3d 449, 139 N.Y.S.3d 816, 817, (1st Dept. 2021) ("Supreme Court correctly determined that defendants had a duty to defend M. Cary as an additional insured because there was a reasonable possibility, based on the allegations in the underlying complaint, that the underlying injury was caused, in whole or in part, by the acts or

omissions of the subcontractors to which the policies were issued in connection with their ongoing operations and therefore that coverage for M. Cary, the general contractor, was implicated under the policies . . . . The fact that the allegations against the subcontractors were debatable and later dismissed by directed verdict is irrelevant to whether the duty to defend arose at the time the complaint was tendered.")

Federal district court decisions construing New York law have equally required employer's insurers to defend general contractors or owners in actions where violations of New York State labor laws are alleged. This was, in fact, the exact ruling in *Charter Oak Fire Ins. Co. v. Zurich American Ins. Co.,* 462 F. Supp. 3d 317 (SDNY 2020), a case in which counsel for Travelers herein was involved. In that action, Josue Bulnes ("Bulnes"), an employee of Slade Industries, Inc. ("Slade") sued the owner of a construction site, ASB L3 72-76 Green Street, LLC ("ASB") alleging that he was injured when he slipped while working on an elevator project. *Charter Oak*, 462 F. Supp.3d at 320. There was no specific allegation of the cause of the fall. *Charter Oak*, Docket 19-cv-4212, Document 28-8. Nor was there any allegation that Slade's work or operations caused the fall. *Id.* Rather, the underlying complaint alleged that the accident was caused by the defendant's negligence. *Id; Charter Oak*, 462 F. Supp.3d at 321. The complaint sought recovery based upon negligence as well as violations of the New York State Labor Laws. ASB later filed a third-party complaint against Slade alleging that Slade was responsible for the injury. *Bulnes v. ASB,* New York State Supreme Court, Bronx County, Index No. 29412/2017, Document 9.

Zurich American Ins. Co. ("Zurich") insured Slade and, upon receipt of a tender from Charter Oak, denied additional insured coverage to ASB. Charter Oak sued Zurich and argued that based upon the allegations in the complaint and the testimony obtained in the underlying suit, Zurich owed a duty to defend ASB. The Southern District agreed, and after noting that an

employee cannot sue his employer, held that because ASB could be vicariously liable for the acts

of Slade, Zurich was obligated to defend ASB:

> The Bulnes Complaint itself makes clear that Bulnes suffered the injury while working as an employee of Slade on the elevator project for Slade at the location at which Slade had contracted to provide services. (Dkt. No. 28–8 ¶¶ 5–10.) Moreover, the underlying facts, of which Zurich was aware (and is now aware), reasonably suggest that it was Slade's negligence—not any act or omission on the part of ASB—that gave rise to the claim. Claimant said that he was "essentially in charge" of the elevator project and had only one additional helper working under his direction. (Dkt. No. 29–1 at 18–19.) No facts have been offered suggesting that any other active participants were in the vicinity of the elevator project around the time of the accident. In addition, Claimant himself testified that the equipment he was carrying at the time of the accident could have leaked the oil upon which he slipped. (*Id.* At 48) ("[I]t could have been from the stuff we were bringing down.") He had never seen oil in that location before. (*Id.*) He also testified that he did not place any tarps on the stairs where the oil was located and that he did not clean up any oil. (*Id.* At 31–33, 48.) Finally, at the time of the fall, Claimant was carrying a large "random box" that he selected. (*Id.* At 40.) New York law requires only a "reasonable possibility" that the insurer will have an indemnification obligation, not a plausible case. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (drawing distinction between possibility and plausibility). Putting all of these facts together, it is reasonably possible that Slade's conduct was negligent and gave rise to the claim against ASB. It is also reasonably possible that the bodily injury Bulnes suffered was caused by Slade's acts or omissions. Zurich has a duty to defend.

*Charter Oak*, 462 F. Supp.3d at 326.

Based upon this law, and the facts herein, Travelers is obligated to defend Axis in the Suit.

First, and contrary to Travelers incorrect position, the complaint in the Underlying Suit alleges not

that Axis is responsible for the accident "for a defect in flooring" (Travelers' Memo of Law, page

8), but rather that Axis created a  dangerous condition; that Axis failed to warn persons of this

condition, that Axis failed to inspect the area where the accident occurred, and that Axis failed to

provide a safe place to work.  Axis' bill of particulars to AWI alleges that AWI failed to provide

a safe place to work, caused or created the dangerous condition, failed to properly warn of the

condition and failed to properly inspect the area where the accident occurred.  The contract

between Axis and AWI required AWI to "take all reasonable safety precautions with respect to the

performance of" AWI's work. The allegations of the complaint and bills of particulars, particularly those that allege that AWI created the condition, together with AWI's contractual obligations, allege that Axis is vicariously responsible for AWI's acts or omissions and are therefore sufficient to trigger a duty to defend based upon the above case including the decision in *Charter Oak, supra*.

Even if these allegations were insufficient (which they are not), Travelers cannot ignore the testimony quoted above, which suggests a reasonable possibility that AWI either removed the taping and caused the lifting of the Masonite or requested that ABC refrain from taping the Masonite, in order for AWI, and therefore Filippone, to perform the work. Just as the Southern District, at Charter Oak's request, refused to ignore this additional information and required Zurich to defend the general contractor in *Charter Oak*, so too must this Court obligate Travelers in the within action to defend Axis.

### E.  The cases upon which Travelers relies are either inapposite or wrongly decided.

Travelers relies upon three decisions to support its weak attempt to avoid defending Axis: *Hanover Ins. Co. v. Philadelphia Indemnity Ins. Co.*, 159 A.D.3d 587 (1st Dept. 2018); *Pioneer Central School Dist. v. Preferred Mut. Ins. Co.*, 165 A.D.3d 1646 (4th Dept. 2018) and *Ohio Security Ins. Co. v. Travelers Indemnity Co.*, 2021 WL 797670 (SDNY 2021). None of these decisions are applicable, however.

*Hanover Ins. Co. v. Philadelphia Indemnity Ins. Co.*, 159 A.D.3d 587 (1st Dept. 2018) arose out of an accident that occurred when an employee of a security company slipped and fell on a wet floor at a school. The employee sued the school alleging that the school negligently caused the accident. *See Hanover Ins. Co. v. Philadelphia Ins. Co.,* New York Supreme Court, New York County Index No. 154006/2014  Documents 4 and 51.  There was no allegation in the underlying

complaint that the school failed to provide a safe place to work. Nor did the accident occur at a construction site at which the underlying plaintiff was working. *Id.* There was therefore no allegation that the school was vicariously responsible for the acts of the security company.

The school then filed a third-party action against the security company employer. During the pendency of the declaratory suit filed by Hanover, the court in the underlying action dismissed the third-party action against the security company and in doing so, held:

> The wet floor was the result of the building owner, defendant/third party plaintiff, Manhattan School of Music's (School) maintenance staff mopping the floor.

*See Hanover Ins. Co. v. Philadelphia Ins. Co.,* New York Supreme Court, New York County Index No. 154006/2014, Document 49.

Based upon these facts, which included the determination of the cause of liability in the underlying action, the First Department held that the acts or omissions of the security company were not a proximate cause of the injury and that therefore, the insurer had no obligation to defend or indemnify the school. The First Department then held:

> [T]he **sole** proximate cause of the injury was the additional insured, and thus coverage is not available to the Manhattan School under defendant's policy.

*Hanover*, 159 A.D.3d 587, 588 (emphasis added).

In the within action, not only has there been no determination that the sole proximate cause of the accident was either Axis' or ABC's work, the complaint in the Underlying Suit alleges that Axis is vicariously liable for the acts of AWI through the allegations of violations of, *inter alia*, Labor Law §241(6), and the third party complaint alleges that AWI created the condition. In addition, testimony that AWI requested that the taping either not be applied or that AWI removed the taping, supports this allegation. As such, the decision in *Hanover* is inapplicable.

The same factual distinctions render the decision in *Pioneer Central School Dist. v. Preferred Mut. Ins. Co.*, 165 A.D.3d 1646 (4th Dept. 2018) inapplicable.  In that action, an employee of a cleaning company slipped and fell on snow and ice in a parking lot and sued the owner of the premises, who then sought additional insured coverage from the employer. There was no construction ongoing at the time of the accident and no allegation that the owner was vicariously responsible for the acts of the cleaning company via a Labor Law §241(6) violation.  Because the cleaning company had no obligation to clear ice and snow from the owner's parking lot, the court held that the employer's insurance company had no obligation to defend or indemnity the owner as an additional insured.

Again, in the within action, not only has there been no determination that the AWI was not negligent, the complaint in the Underlying Suit alleges that Axis is vicariously liable for the acts of AWI through violations of, *inter alia*, Labor Law §241(6), and the third-party complaint alleges that AWI created the condition.  In addition, testimony that AWI requested that the taping either not be applied or that AWI removed the taping, supports this allegation.  As such, the decision in *Pioneer* is also inapplicable.

Finally, the decision in *Ohio Security Ins. Co. v. Travelers Indemnity Co.*, 2021 WL 797670 (SDNY 2021) is not only distinguishable, the Court in that action misunderstood the liability imposed by the New York State Labor Laws. In that action, an employee of an HVAC contractor was allegedly injured when he tripped and fell while working.  He sued the owner and construction manager of the premises, alleging negligence and violations of the New York State Labor Laws.  The complaints did not identify the HVAC Contractor at all and alleged only that the negligence of the defendants caused the accident.  *Ohio,* 2021 WL 79760 at *1. That said, the owner and construction manager filed a third-party action against the HVAC contractor/employer

seeking contractual indemnification. *Id.* The third-party action, however, did not allege that the HVAC contractor/employer created the condition which was alleged to have caused the accident. Moreover, and contrary to the facts herein, the parties in *Ohio* agreed that the HVAC Contractor had nothing to do with the temporary floor coverings:

> Ohio does not dispute that Airforce—as an HVAC subcontractor—would have nothing to do with the placement or maintenance of temporary floor coverings.

*Id.* At *5. Ohio argued that Travelers, which insured Airforce, was obligated to defend and indemnify the owner and construction manager based upon the allegations that they violated the New York State Labor Laws (*Id* at *4) that Airforce was responsible for all safety issues related to its employee's work. *Id.* At *5.

The Southern District in *Ohio* first noted, incorrectly, that although the Labor Law imposed a nondelegable duty upon owners and general contractors at jobsites, the "owner's liability under these provisions is primary, not derivative of negligence by a contractor or subcontractor." *Id* at *5. This is, of course, incorrect as an owner's liability pursuant to the Labor Law is vicarious and can derive from the negligence of its subcontractors. *See Point I A, supra.* That said, the Court found that because there was neither an allegation that the HVAC contractor/employer created the condition which led to the accident; nor any evidence adduced in discovery that suggested that the HVAC contractor/employer created or contributed to the accident, the mere allegation that the HVAC contractor/employer was responsible to provide a safe place to work was insufficient to trigger Travelers' duty to defend under a "caused by" additional insured endorsement.

At the outset, this decision is contrary to the above decisions including the decision in *Charter Oak, supra*. Contrary to the ruling in *Ohio*, where a complaint identifies the name of the employer and alleges that a defendant failed to provide a safe place to work pursuant to Labor Law §241(6) and the defendant then files a third party action against the employer, the allegations in

the complaint and third party complaint trigger a duty to defend the defendant/general contractor because the vicarious liability imposed by the Labor Law for failing to provide a safe place to work and causing/creating the condition can be passed through to the employer and because the duty to defend under a "caused by" endorsement is triggered by such allegations.

Just as importantly, the facts herein differ dramatically from the facts in *Ohio*, in that the evidence shows that  not only ABC, but also Axis, contend that AWI either directed ABC not to tape the Masonite in the area of the Accident, and/or lifted the tape on the Masonite so that AWI could perform its work.  Stated another way, unlike in *Ohio*, where Ohio agreed that Airforce had no direct responsibility for the accident, in this action, the parties in the Underlying Suit contend that AWI was negligent. In other words, the parties in the Underlying Suit contend that Axis is vicariously liable for the acts of AWI.  This distinction results in the conclusion that the decision in *Ohio* is inapposite and inapplicable.

Finally, Travelers cannot argue that SNIC may not rely upon this testimony in opposition to this motion for summary judgment since SNIC alerted Travelers that SNIC intended to rely upon all testimony in the Underlying Suit in its Rule 26 disclosures (Exhibit 1 to the Pavloff Aff); since the testimony relied upon was not taken at the time of SNIC's disclosure (the Rule 26 disclosures were made in April, 2020 and the deposition testimony was not taken until, at the earliest, July, 2020); since counsel for SNIC in October, 2020 asked if any party had received the additional transcripts (Exhibit "2" to the Pavloff Aff); and since Travelers is defending AWI in the Underlying Suit and thus, has access to these transcripts.

In sum, Travelers' own counsel successfully obtained a ruling in the *Charter Oak* decision that Zurich was obligated to defend Travelers' named insured in that decision based on the very

same arguments Travelers contends are inapplicable here.  Based upon the relevant case law above, Travelers has a duty to defend Axis in the Suit.

## POINT II

## TRAVELERS DUTY TO DEFEND IS NOT EXCESS OVER SNIC'S DUTY TO DEFEND AXIS BECAUSE TRAVELERS AND SNIC INSURE DIFFERENT RISKS

Prior to motion practice in this matter, SNIC agreed that it owed a duty to defend Axis in the Suit.  SNIC's duty to defend Axis and Travelers' duty to defend Axis co-exist and the two insurers are obligated to participate equally in Axis' defense. Travelers contends that if it owes a duty to defend Axis, such obligation is excess over SNIC's obligation, based upon a comparison of the "Other Insurance" clauses contained in the two policies.  Such argument is incorrect.

It has long been settled that where two or more policies insure the same risk, to determine the priority of those policies, courts look to the "Other Insurance" clauses contained in the policies. *See, e.g., Great Northern Ins. Co. v. Mount Vernon Fire Ins. Co.*, 92 N.Y.2d 682 (1999).  Where a general contractor is insured by its own insurer and obtains additional insured coverage from a subcontractor's insurer, the risk insured is the same.  *Sport Rock Int'l v. American Cas. Co. of Reading, Pa*, 65 A.D.3d 12 (1st Dept. 2009) (cited by Travelers).  Where two subcontractors' insurers provide additional insured coverage to a general contractor for an underlying bodily injury suit, the two insurance policies do not insure the same risk and therefore resort to "Other Insurance" clauses is inapplicable.  *HRH Constr. Corp. v. Commercial Underwriters Ins. Co.*, 11 A.D.3d 321, 323 (1st Dept. 2004):

> While both American Casualty and Commercial Underwriters provided primary insurance to HRH, they did not insure the same risk. The carriers insured HRH as to the risks associated with two separate subcontractors' individual work at the job site. Each insurer afforded coverage to HRH only for claims arising out of work performed by that carrier's primary named insured. Thus, the claims herein do not involve a coinsurance situation.

*See also, Pennsylvania Mfrs. Ass'n v. Liberty Mut. Ins. Co.*, 39 A.D.3d 1161, 1162 (4th Dept. 2007).

As a result, this Court cannot rely upon the "Other Insurance" clauses contained in the SNIC and Travelers policies to determine the priority of coverage between the two as respects their obligations towards Axis. Rather, in this situation, because the two insurers both provide primary insurance for different risks, they are obligated to contribute equally towards the defense and indemnification of Axis. *See, Hawthorne v. Couth Bronx*, 78 N.Y.2d 443 (1991).


## CONCLUSION

By reason of the foregoing, SNIC requests that this Court deny Travelers' motion for summary judgment and obligate Travelers to co-insure Axis in the Suit.

WHEREFORE, it is respectfully requested that this Court deny Travelers' motion in its entirety and for such other and further relief as is just and equitable.

Date:  New York, New York
        April 26, 2021

STONBERG MORAN, LLP
Attorneys for Defendant
STATE      NATIONAL      INSURANCE
COMPANY

By: _____
      Sherri N. Pavloff (SP-5373)
505 Eighth Avenue, Suite 2302
New York, New York   10018
(212) 231-2220
File No.: 40191

TO:

CHARTWELL LAW

Attorneys for Plaintiff
One Battery Park Plaza, 35th Floor
New York, New York   10004
Attn: Matthew Kraus, Esq.

KEANE & ASSOCIATES
Attorney for Travelers Indemnity
Company of Connecticut
PO Box 2996
Hartford, CT 06104-2996