UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------

AXIS CONSTRUCTION CORP.,

               Plaintiff**,**

       -vs-                                Civil Action No.: 2:20-CV-01125

TRAVELERS INDEMNITY COMPANY OF
CONNECTICUT AND STATE NATIONAL      ORAL ARGUMENT REQUESTED
INSURANCE COMPANY,

               Defendants.
---------------------------------------------------------

# **DEFENDANT TRAVELERS INDEMNITY COMPANY OF CONNECTICUT'S REPLY TO OPPOSITION TO CROSS SUMMARY JUDGMENT MOTION**

Defendant Travelers Indemnity Company of Connecticut ("Travelers"), by and through its undersigned counsel, Keane & Associates, hereby submits its Reply to the SNIC Opposition and the Axis Opposition and in further support of its Cross Motion for Summary Judgment. Travelers respectfully requests oral argument.

Travelers has no duty to defend Axis *for a defect in flooring* at the construction site, an aspect of the construction project wholly divorced from any work performed by AWI, *the Millwork contractor*. While Axis and SNIC have both opposed Travelers' Cross Motion, their arguments fail both procedurally and substantively. Most fundamentally, Axis and SNIC mistakenly argue that Travelers is obligated to defend Axis, regardless of fault or negligence, simply because AWI's employee was injured. This is simply unsupported by the law. Accordingly, judgment should enter in Travelers favor, finding it has no duty to defend or indemnify Axis.

**I.    Because SNIC And Axis Failed To Comply With Local Rule 56.1(b), Those Factual Claims Should Be Rejected And/or The Oppositions Stricken From The Record**

In response to Travelers' Cross Motion for Summary Judgment, SNIC and Axis have both attempted to raise issues of fact without inclusion of any such facts in a Statement of Additional Facts as required by Local Rule 56.1(b). Instead, they attempt to incorporate new or disputed facts directly into the Opposition briefs. Further, Axis' Opposition fails to cite with specificity the evidence it relies upon. Instead, Axis makes general reference to exhibits and places the burden upon this Court to scour the record. (Axis Opp. at pp. 5-7 (April 26, 2021)).

The Local Rule 56 "requirement is strict." *Knight v. Nassua County*, 2019 WL 3817392 (E.D.N.Y. Aug. 14, 2019) (citations omitted). Once the moving party files the Statement of Undisputed Facts, "the nonmoving party must respond to each numbered allegation in the moving party's statement and include, if necessary, a statement of additional material facts, as to which a genuine issue exists." *Knight*, 2019 WL 3817392, at *4. Notably, "it is not the role of the Court to search the summary judgment record for evidence supporting a party's motion or opposition thereto." *Id.* (citing *Teamsters Conf. v. Express Servs.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (recognizing authority of district courts to institute local rules governing summary judgment submissions, which permits courts 'to efficiently decide' such motions 'by relieving them of the onerous task of 'hunting[ing] through voluminous records without guidance from the parties'')). The incorporation of facts into a brief does not satisfy the requirements of Local Rule 56.1. That is because "[a] memorandum of law is not a proper vehicle through which to present facts to the Court." *Id.* at *5 (citations omitted). The same is true of an opposition. *Id.* Finally, "where [a party] cites to entire exhibits, without greater specificity, the Court need not consider them." *Id.* (citing *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470-71 (2d Cir. 2002) (denying summary judgment on this basis).

Here, both Axis and SNIC have failed to set forth a separate concise statement of additional material facts they contend are in dispute. Instead, they have elected to set forth additional factual assertions directly within the Opposition briefs. Further, Axis' brief fails to cite to exhibits with specificity and instead generically refers to the exhibits. Accordingly, because Axis and SNIC have failed to comply with Local Rule 56.1, these factual assertions should be stricken and/or disregarded by the Court.

II. **In Considering Axis' Motion For Summary Judgment, The Court Should Strike From Consideration Evidence And Arguments Offered By Axis For The First Time In The Reply Brief**

In Axis' Motion for Summary Judgment, it relied entirely upon the four corners of the various complaints filed in the Underlying Action. Axis elected not to introduce extrinsic evidence in its Motion for Summary Judgment. Travelers opposed Axis' Motion for Summary Judgement in kind, arguing that the duty to defend is not triggered by the four corners of the Complaint in the Underlying Action. In response to Travelers' Opposition and Cross Motion, Axis, for the first time, offers extrinsic evidence outside the complaints in the Underlying Action to argue that the duty to defend is triggered. In doing so, Axis has improperly blinded sided Travelers. This newly offered argument and supporting evidence, raised for the first time in Axis' Reply, should be disregarded as untimely and prejudicial.

III. **Even If Permissible, The Transcripts And Exhibits Support A Finding That Travelers Has No Duty To Defend Axis**

In both the SNIC Opposition and the Axis Opposition, SNIC and Axis argue that AWI requested that ABC not tape the masonite thereby placing potential responsibility on AWI for causing the Incident. (Axis Opp. at p. 6; (SNIC Opp. at p. (April 26, 2021)). First, this assertion is untrue and/or the product of unfounded speculation. "A party cannot defeat a motion for summary judgment with mere speculation and conclusory assertions." *Nguedi v. Federal Reserve Bank*, 813

Fed.Appx. 616, 617 (2d Cir. 2020) (citations omitted). At most, SNIC and Axis have brought forth deposition testimony demonstrating that AWI and other contractors, at times, asked ABC not to tape certain masonite. There is nothing to suggest that AWI made that request in connection with the area of the Claimant's injury or that the request was honored.

Further, even if true that AWI asked ABC not to tape the masonite, this purported request by AWI nonetheless does not transfer responsibility for the condition of the floor from Axis and ABC to AWI or create causation. Even a cursory reading of the transcripts serves to confirm that both ABC and Axis, and not AWI, were the cause of any alleged unsafe flooring and where wholly responsible for its condition. It is beyond dispute that the masonite which allegedly cause the Claimant's fall was left untaped because there was a rush to get it installed to allow work to continue in the area. ABC was responsible for installing and taping the masonite floor, Axis controlled sequencing of the work and overall safety, and AWI was permitted to work in the area while the installation of masonry was underway contrary to the general practice.

### A. Deposition Of Luis Dimuro On Behalf Of ABC

Taking a closer look at the testimony of ABC's general foreman, Luis Dimuro, the night before the accident, carpet was installed in the area of the Claimant's fall. (Depo. of Luis Dimuro at p. 16 (Exhibit 3 to SNIC Opp.)). ABC then undertook to install masonite flooring over the carpet to protect the carpet during continued work. (Id. at pp. 16-17 (Exhibit 3 to SNIC Opp.)). It was ABC's job to tape down the masonite. (Id. at p. 17 (Exhibit 3 to SNIC Opp.)). The purpose of taping down the masonite floor was "[f]or tripping" and to provide a safe job site. (Id. at p. 32, 37-38. (Exhibit 3 to SNIC Opp.)).

Although the installation of masonite took more than a day, workers including AWI were permitted to continue working in the area prior to its full installation; a practice that was contrary

to Mr. Dimuro's prior practice at other jobsites. (Id. at pp. 16-17, 36-38 (Exhibit 3 to SNIC Opp.)). While he did not control the scheduling of other trades, on prior jobs the entire room was taped up before workers come in to make the whole room safe. (Id. at p. 45 (Exhibit 3 to SNIC Opp.)). It was probably Mr. Dimuro's decision to tape down the masonite as you go and no one instructed him to do it that way. (Id. at p. 48 (Exhibit 3 to SNIC Opp.)). Nonetheless, Axis controlled the sequencing of work and directed ABC where to begin. (Id. at p. 59 (Exhibit 3 to SNIC Opp.)).

While Mr. Dimuro acknowledged shifting of masonite as work was completed, he was unable to explain why photographs showed "all the masonite down in the entire area and none of it or very little of it taped." (Id. at pp. 34-35 (Exhibit 3 to SNIC Opp.)). In fact, he testified "I don't know why it is not taped." (Id. (Exhibit 3 to SNIC Opp.)). Mr. Dimuro testified that the various areas of untaped masonite were "probably not taped down yet." (Id. at pp. 22-23 (Exhibit 3 to SNIC Opp.)). In fact, on the day of the Claimant's fall, the room was described as "**bedlam**." (Id. at p. 56 (Exhibit 3 to SNIC Opp.) (Emphasis added)). "It was **very busy**. Machines going over the carpet. They had to **hurry to get the masonite down**." (Id. at p. 56 (Exhibit 3 to SNIC Opp.) (Emphasis added)).

It is further notable that when AWI was installing bases, AWI relied upon ABC by asking ABC to "move around Masonite under tapes and stuff to put column bases in or something like that." (Id. at p. 33 (Exhibit 3 to SNIC Opp.)). In this manner, AWI relied upon ABC in all respects as to the condition of the flooring. AWI was not, however, the only contractor that required the masonite to be movable to complete their work. (Id. at p. 71 (Exhibit 3 to SNIC Opp.)).

Based upon the foregoing, it is clear that ABC retained responsibility for the installation and taping of the masonite flooring. While AWI and other contractors purportedly asked for portions to be left untaped to enable them to install various items, SNIC and Axis have brought

5

forth nothing but unsupported speculation and conjecture to connect any such request to the Claimant's fall. "A party cannot defeat a motion for summary judgment with mere speculation and conclusory assertions." *Nguedi*, 813 Fed.Appx. at 617 (citations omitted).

Furthermore, even if AWI asked for the section at issue to be untaped, the decision to honor such request and forego taping would lie entirely with ABC. Finally, Mr. Dimuro, on behalf of ABC, provided extensive testimony that the installation and taping of the floor was rushed, "bedlam," and outside the usual course because of scheduling, a task that fell to Axis as the general contractor. (Id. at pp. 56-58 (Exhibit 3 to SNIC Opp.)). In every respect, the Underlying Action seeks to hold Axis responsible for its own negligence or that of ABC.

### B. The Deposition Of Doug Lopresti

Doug Lopresti, the shop steward for AWI, testified that the masonite in the area of the Claimant's fall had not been taped down. (Depo. of Doug Lopresti at p. 22 (Exhibit 4 to SNIC Opp.)). He further testified that prior to the incident, he specifically requested from Axis that it be taped down because he himself had tripped. (Id. at p. 22-23 (Exhibit 4 to SNIC Opp.)). In response, Lopresti was told by ABC that "[i]t is not going to happen." (Id. at p. 30 (Exhibit 4 to SNIC Opp.)).

At the time of the Claimant's fall, "[t]here is little to no areas that were taped down. Maybe, 10, 20 percent. But it was really, from what I recall, it was not very much in the way of taping down." (Id. at p. 28 (Exhibit 4 to SNIC Opp.)). In this respect, it was not that AWI requested the masonite be left untaped. ABC had simply not taped the masonite as it rushed to cover the carpet. (Id. at p. 28 (Exhibit 4 to SNIC Opp.); see also Depo. of Lois Dimuro at pp. 56-58 (Exhibit 3 to SNIC Opp.)).

Based upon the foregoing, extrinsic evidence demonstrates clearly that the Claimant seeks to hold Axis responsible for its own independent acts or those of ABC and **not** to impose vicarious liability for the acts of AWI.

### C. The Accident Reports And Photographs

Likewise, the Accident Reports demonstrate that the alleged condition was caused by defective installation of flooring, having nothing to do with millwork performed by AWI.

The Accident Report completed by AWI provides as follows:

> Millwork job. Carpeted floor with 1/8 masonite protection. Curling masonite ends sticking up are very easy a tripping hazard. Pete Filippone caught the very edge that was not taped down properly and then fell face first with tools on. Possible rib & or arm/shoulder injury.

(Depo. Exhibits at p. 2 (Exhibit 6 to Axis Opp.)).

Those limited photographs offered by Axis in the Opposition likewise show a chaotic jumble of masonite. (Id. at p. 3-4 (Exhibit 6 to Axis Opp.)). This comports with the undisputed testimony regarding the "bedlam" conditions of the room caused by ABC's rushed installation of the masonite while contractors were scheduled by Axis to continue working. Based upon the foregoing, Axis and SNIC have failed to show a reasonable possibility of coverage from other facts purportedly known.

### IV. Axis and SNIC's Reliance On Alleged Labor Law Violations And Self-Serving Speculation Is Misplaced

Axis and SNIC continue to argue without support that because Filippone asserts claims for violations of the New York Labor Law and AWI was his employer, his claims **must** stem from AWI's acts or omissions and/or are potentially derived from vicarious liability. (Axis Opp. at p. 2-3). "But that is neither true as a general matter nor consistent with the allegations in the complaint." *Ohio Sec. v. Travelers Indem.*, 2021 WL 797670, *4 (S.D.N.Y. Mar. 1, 2021). The provisions of the New York Labor Law that Filippone relies on impose nondelegable duties on

property owners and contractors to maintain safe premises. "A property owner's liability under these provisions is **primary**, not derivative of negligence by a contractor or subcontractor." *Ohio Sec*, 2021 WL 797670, *4 (emphasis added). In support of those claims, Filippone "repeats and re-alleges the other factual allegations of the Complaint-that is, the allegations of negligent primary conduct by the first-party defendants." *Id.*; (Travelers Local R. 56.1 Statement at ¶¶21-25). Thus, Axis' "potential liability in the underlying is for [its] own independent acts or omissions." *Ohio Sec.*, 2021 WL 797670, at *4 (quoting *Tishman*, 76 N.Y.S.3d at 164). Nothing in the Complaint even hints at a claim based upon negligence by AWI or implies that AWI was somehow at fault. This finding is unchanged by a review of the newly offered deposition transcripts, as discussed above. Finally, it is incorrectly argued that AWI was Axis' agent with respect to the masonite. This is contrary to contractual agreement between the parties as well as the deposition testimony which demonstrate that AWI had no responsibility for the masonite in any respect. Accordingly, Axis and SNIC's arguments regarding New York Labor Law claims are baseless and should be rejected.

Furthermore, contrary to Axis' claims, the self-serving legal conclusions set forth in the third-party complaint filed by Axis, which are devoid of factual support, cannot trigger coverage. (Axis Opp. at p. 3). Legal conclusions alone are not sufficient to create a reasonable possibility of coverage to trigger a duty to defend because such conclusions are ***not facts***. *Allstate v. Mugavero,* 79 N.Y.2d 153, 162 (NY Appl 1992); *see also HDI-Gerling America Ins. Company v. Liberty Mutual Ins. Co.*, 10-CV-00740(S)(M) (W.D.N.Y. 2013); *Shriver Ins. Agency v. Utica Mutual Ins. Co.*, 323 Ill.App.3d 243, 247-251 (Ill. App. 2001). Indeed, "[a] party **cannot** defeat a motion for summary judgment with mere speculation and conclusory assertions." *Nguedi*, 813 Fed.Appx. at 617 (citations omitted).

## V. SNIC's Reliance On Charter Oak V. Zurich Is Misplaced

In SNIC's Opposition, SNIC goes to great lengths to detail the purported similarities between the instant matter and *Charter Oak v. Zurich American*, 462 F.Supp.3d 317 (S.D.N.Y.). (SNIC Opp. at p. 15). SNIC's attempts to draw similarities serve only to highlight the dramatic differences between Charter Oak and the instant matter. (Id. (quoting Charter Oak, 462 F.Supp.3d at 326)). While the Court acknowledged the employment relationship, the finding of additional insured coverage was entirely dependent on facts of active negligence on the part of the named insured. Turning to those facts, in *Charter Oak*, unlike here, the claimant was "essentially in charge" of the project. (Id.). Further, in *Charter Oak* "[n]o facts have been offered suggesting that any other active participants were in the vicinity of the elevator project around the time of the accident." (Id.). Likewise, "Claimant himself testified that the equipment he was carrying at the time of the accident could have leaked the oil upon which he slipped." By contrast, here, all evidence points to fault and/or active negligence on the part of ABC and Axis and not AWI.

## VI. Even If Extrinsic Evidence Has Established The Duty To Defend, Travelers' Duty Only Arose Upon Receipt Of Triggering Facts Outside The Complaint

Even if it is found that Travelers has a duty to defend based upon facts outside the complaint, which is disputed, that defense obligation is nonetheless limited in that it only arose upon receipt of any such evidence. Because the duty to defend was not triggered by the allegations of the Complaint in the Underlying Action, Travelers had no duty, if at all, until it received that extrinsic evidence. If Travelers is obligated to defend and reimburse defense costs, that obligation is limited in time accordingly. It is notable that Axis, itself, moved for summary judgment based upon the four corners of the complaint in the Underlying Action. In this respect, it cannot be fairly said that Travelers' duty to defend arose prior to Axis first raising extrinsic evidence in the Opposition to Travelers' Cross Motion for Summary Judgment on April 26, 2021. Accordingly,

even if Axis is entitled to a defense, which is denied, Travelers' defense obligation arose, at the earliest, on April 26, 2021.

Wherefore, based upon the forgoing, Travelers respectfully requests that Plaintiff's Motion for Summary Judgment be denied and Travelers' Cross Motion be granted declaring that Travelers has no duty to defend or indemnify Axis.

Dated:    Hartford, Connecticut
           May 17, 2021

**RESPECTFULLY SUBMITTED:**

**KEANE & ASSOCIATES**

By:    /s/Meg R. Reid_____
      Meg R. Reid, Esq.
      Phone : 917-778-6680
      Fax: 844-571-3789
      Email: mrreid@travelers.com

      <u>Please address all correspondence sent by mail to:</u>
      P.O. Box 2996
      Hartford, CT 06104-2996

      <u>Physical Address:</u>
      485 Lexington Avenue, 6th Floor
      New York NY 10017

      *Attorneys for Defendant Travelers Indemnity Company of Connecticut*

<u>CERTIFICATION OF SERVICE</u>

I hereby certified that on May 17, 2021, a copy of the foregoing was filed with the Clerk of the Court and/or served in accordance with the Federal Rules of Civil Procedure, the Eastern District's Local Rules, and the Eastern District's Rules on Electronic Service upon the following parties and participants via regular mail and email:

> Matthew Kraus, Esq.
> Chartwell Law
> One Battery Park Plaza, 35th Floor
> New York, New York 10014
> *Attorneys for Axis Construction Corp.*
>
> Sherri N. Pavloff, Esq.
> Stonberg Moran, LLP
> 505 Eighth Avenue, Suite 2302
> New York, NY 10018
> *Attorneys for State National Insurance Company*

                                                              /s/Meg R. Reid
                                                              Meg R. Reid